[No. B033091. Second Dist., Div. Seven. Apr. 7, 1989.]

WRATHER PORT PROPERTIES, LTD., Plaintiff and Respondent, v.
COUNTY OF LOS ANGELES et al., Defendants and Appellants.

COUNSEL

De Witt W. Clinton, County Counsel, and David L. Muir, Deputy County Counsel, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Robert F. Tyler and Robert D. Milam, Deputy Attorneys General, as Amici Curiae on behalf of Defendants and Appellants.

Ajalat & Polley, Charles R. Ajalat, Terry L. Polley and Richard J. Ayoob for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—The issues in this case are: (1) whether an amendment to a lease of tax-exempt real property extending the term of possession from 40 to 66 years is a "change in ownership" under Revenue and Taxation Code, section 61, subdivision (b) thereby permitting a reassessment of the property for property tax purposes; (2) if so, does section 61, subdivision (b) violate the property tax reassessment provisions or the equal protection clause of the California Constitution?

We have determined under the facts of this case the extension of the term of possession of leased tax-exempt real property was not a "change in ownership" under Revenue and Taxation Code, section 61, subdivision (b). Therefore, we do not reach the constitutional questions presented.

## FACTS AND PROCEEDINGS BELOW

In October 1980, the City of Long Beach (City) leased the Queen Mary and appurtenant real property to Wrather Port Properties, Ltd. (Wrather). At the time the lease was executed, 40 years was the maximum term permitted under the Long Beach City Charter for the lease of City real property. However, Wrather and the City were aware a charter amendment would appear on the November 1980 ballot which, if approved, would permit the City to lease real property for a maximum of 66 years. The parties included the following provision in their lease: "2.3 *Extension of Term*: In the event the provisions of the City Charter of the City of Long Beach shall hereafter be amended to permit the leasing of waterfront property within the Harbor District by the Board for a period in excess of forty (40) years, the term of this Lease shall be extended by a period equal to the additional number of years so permitted by a Charter amendment and the parties shall promptly execute an amendment to this Lease stating the new expiration date."

The lease also contained an escape clause which allowed Wrather to terminate the lease in the fifth year if it suffered losses in the first four years in excess of a specified amount.

The Long Beach voters approved the charter amendment extending the maximum lease period for City real property from 40 to 66 years and the new charter provision took effect in December 1980. Thereafter, in December 1981, the City and Wrather executed an amendment to the lease extending the term of possession from 40 to 66 years as required by section 2.3 of the original lease, quoted above.

In 1983, the Los Angeles County Tax Assessor made his first determination of the value of Wrather's lease. The notes explaining the original assessment were introduced at trial. They begin with a summary of the Wrather lease in which the assessor stated: "The City of Long Beach entered into a new lease with Wrather Port Properties, Ltd. for a term of 66 years. The agreement is very complex. Some of the highlights are as follows:

". . . . . . . . . . . . . . . . .

"(4) Early termination—In first 5 yrs. [*sic*] tenant has option to terminate his lease in its entirety or just the Queen Mary assets only, if the tenant has experienced a net . . . operating loss."

Then, in explaining the term of years selected for assessment purposes, the assessor stated, "Wrather's lease calls for a term of 66 years. The question is will they be there that long. In looking back into history and judging its past performance, the Queen Mary will never justify the money that has been spent on it. Now whether Wrather can make this a viable project is doubtful. It seems that Wrather is just hoping to break even on this project but gain the rights to build a boat marina and also to develop the other option parcels—4, 5 & 6. The answer to these questions won't be forthcoming for a couple of years. Wrather still has to complete its Spruce Goose project and redo Mary's gate village plus continue changing and improving the Queen Mary.

"Since this is such a speculative venture, and since so much of it is undergoing new construction it is best judged that to use a full term on this lease would be improper. And since in the 5th year Wrather is given choices to either cancel his agreement, or continue all or part of it; using a 5 year term seems best for now and not considering the remaining years."

Wrather did not challenge this original assessment.

In 1985, the assessor revalued the Wrather lease. His justification for doing so was that the automatic increase in the term of the lease, from 40 to 66 years, "was a reappraisal event which was not reappraised in error." The 1985 revaluation resulted in a higher value being placed on the lease because the term of possession was deemed to be 66 years. Consequently, a higher property tax assessment was levied retroactive to 1982.

Wrather paid the increased taxes resulting from the reappraisal of its lease. It then brought this action for a refund of the additional taxes claiming there had been no "change in ownership" as a result of the 1981 amendment to the lease or, if that amendment did constitute a change in ownership under Revenue and Taxation Code section 61, then the statute was unconstitutional as applied to the Wrather lease.

Trial was held on stipulated facts including the assessor's notes and the Wrather lease quoted above. In its findings of fact, the trial court found, inter alia: "On or about October 7, 1980, and based on the reasonable expectation of a *maximum* 66-year term, Wrather and City entered into a lease agreement to the subject property . . . . The original lease specified a term equal to the maximum term allowed by the City Charter. The original lease created the rights to a 66-year term. The possessory interests involved herein (as to land and improvements then existing) were created October 7, 1980. Any rights to a 66-year term were granted in the original lease. No

further consideration was necessary nor given. Such rights were vested as of October 7, 1980. . . .

"In making the initial assessment in 1982 (as to the October 7, 1980 valuation date), the Assessor was aware of the Lease and First Amendment, recognized the lease was for 66 years and treated it as a change in ownership.

". . . . . . . . . . . . . . . . . . .

"Pursuant to the mandate of the original lease, Wrather and City entered into a 'First Amendment' to the original lease on December 31, 1981, which amendment accomplished the mechanical specification of the 66-year term granted in the original lease.

"Five years after entering into the original lease, and after the Queen Mary project began succeeding, the Assessor revalued the property and substantially increased Wrather's taxes, contending that the execution of the First Amendment constituted a second 'change of ownership' that allows removal of the Property Tax Limit of California Constitution Article XIIIA ('Proposition 13'). Such assessment was enrolled subsequent to November 6, 1985. The parties stipulated the enrollment was on December 30, 1985.

"There was no creation, renewal, sublease or assignment of the lease under Revenue and Taxation Code Section 61 when the First Amendment specified the 66-year term." (Italics in original.)

The trial court awarded judgment to Wrather on its statutory and constitutional theories and ordered Los Angeles County and the City of Long Beach to refund the excess taxes collected on the basis of the 1985 revaluation. The county and City appeal. (For convenience we will refer to the appellants as the County.)

DISCUSSION

Article XIII A, section 2 of the California Constitution, enacted as part of Proposition 13, permits reassessment of real property for property tax purposes when a "change in ownership has occurred." It is undisputed the leasing of publicly owned real property to a private party creates a taxable possessory interest in the private party and a "change in ownership" for tax assessment purposes. (Rev. & Tax Code, §§ 60, 61, 107; *Host International, Inc.* v. *County of San Mateo* (1973) 35 Cal.App.3d 286, 289 [110 Cal.Rptr.

652].) The dispute in the matter before us is whether, after this initial change in ownership occurs, the automatic extension of the term of possession under a provision of the original lease constitutes a second "change in ownership" thereby triggering a revaluation of the possessory interest in the tax-exempt property. For the reasons set forth below, we hold it does not.

As noted above, the trial court found as facts: (1) Wrather and the City entered into the lease "based on the reasonable expectation of a *maximum* 66 year term" (italics added); (2) "The original lease specified a term equal to the maximum term allowed by the City Charter"; (3) "In making the initial assessment . . . the Assessor was aware of the Lease and First Amendment, recognized the lease was for 66 years and treated it as a change in ownership"; the " 'First Amendment' to the original lease . . . accomplished the mechanical specification of the 66 year term granted in the original lease." On the basis of these facts, the trial court concluded, "[T]he original lease created the rights to a 66-year term and there has been no subsequent change of ownership for the years involved . . . ."

The County does not challenge the trial court's findings of fact but challenges its conclusion on the ground that, as a matter of law, the original lease could not have conveyed the right to a 66-year term because on the date the lease was executed the City only had the power to lease its real property for a maximum term of 40 years.

In support of its argument, the County relies on the stipulated fact that at the time the lease was executed the City's leasing power was limited to 40 years and the provisions in the lease that the term "shall be forty (40) years" unless the City Charter is amended in which case "the term of this Lease shall be extended by a period equal to the additional number of years so permitted . . . ." The County cites us to State Board of Equalization (Board) regulations providing a change in ownership occurs when "possessory interests [are] renewed, extended, subleased or assigned" and defining "extended or renewed" to mean "the lengthening of the term of possession of an agreement by mutual consent or by the exercise of an option by either party to the agreement." (Cal. Code Regs., tit. 18, §§ 467, 21, subd. (h).) The County argues Wrather and the City set the lease term at 40 years and then, after the City Charter was amended, "extended" the term of possession by mutual consent or by the exercise of an option under the lease.

The County's argument ignores section 23, subdivision (a) of the Board's regulations. That section states, "When a written instrument creating a possessory interest specifies a period of occupancy which is to exist, the stated period shall be taken as the term of possession for purposes of

valuation except as provided in this section. An option period shall be considered part of the stated period if it is reasonable to conclude that the option will be exercised." (Cal. Code Regs., tit. 18, § 23, subd. (a).)

The trial court found, in essence, that Wrather and the City intended to create a possessory interest for the maximum term allowed by law. This finding is supported by the language of the lease provisions quoted above and by the stipulated fact that during the time the lease was being negotiated Wrather and the City were aware of the pending charter amendment which would be voted on a month after the lease was executed. Even if the provision incorporating the new maximum term into the lease is viewed as an option, the automatic incorporation of the new maximum term made it "reasonable to conclude" the option would be exercised.

The "exception" referred to in section 23, subdivision (a), *supra,* also supports Wrather's position in this litigation. Subdivision (b) of section 23 provides that if the term of possession determined under subdivision (a) conflicts with the reasonably anticipated term of possession by the possessor then the reasonably anticipated term of possession shall be used instead of the term stated in the lease. "In determining the reasonably anticipated term of possession, the assessor shall be guided by the intent of the public owner and the possessor, as indicated by such evidence as (1) sale prices of the subject or similar possessory interests, (2) the history of the property's use, (3) the policy of the public agency administering the lands, and (4) the actions of the possessor." (Cal. Code Regs., tit. 18, § 23, subd. (b).) Here, the stipulated facts show the assessor, from the very beginning, interpreted the parties' intent to be to create a 66-year lease.

The County offers two policy reasons why it should be allowed to treat a lease amendment extending the term of possession as a change in ownership triggering a revaluation of the property. Neither of these reasons are applicable to the facts of the present action.

First, the County contends that where the increased term of possession depends on a condition subsequent, as it did here, it would be unfair to the taxpayer to value the property as if that subsequent condition had already occurred.

This is reasonable enough as a general proposition but it ignores the requirement of regulation 23 that the valuation be based on the specific conveyance at issue and the specific intent of the parties, not on general propositions. For example, in *American Airlines, Inc.* v. *County of Los Angeles* (1976) 65 Cal.App.3d 325, 329 [135 Cal.Rptr. 261] [Lillie, J.] the

court held that under regulation 23 the assessor could not value leases of passenger terminal facilities on the expectation the leases would be renewed when none of the leases contained an option to renew and there was no evidence of any understandings or agreements regarding renewal. The court distinguished cases in which the assessor totalled the original lease term and the option periods in valuing the lease. (*El Tejon Cattle Co.* v. *County of San Diego* (1966) 64 Cal.2d 428, 430 [50 Cal.Rptr. 546, 413 P.2d 146]; *County of Riverside* v. *Palm-Ramon Development Co.* (1965) 63 Cal.2d 534, 540 [47 Cal.Rptr. 377, 407 P.2d 289].) In those cases, not only did the leases contain option clauses but the facts showed the parties intended the options would be exercised. (*American Airlines, Inc.* v. *County of Los Angeles, supra,* 65 Cal.App.3d at p. 329.)

Here, the assessor did not have to "indulge in prophecy in order accurately to value possessory interests." (*American Airlines, Inc.* v. *County of Los Angeles, supra,* 65 Cal.App.3d at pp. 330-3331.) At the time the parties signed the lease the charter amendment extending the maximum lease period was already on the ballot and the election less than a month away. The parties clearly contemplated the amendment would pass and that they were entering into a 66-year lease. Once the charter amendment was approved, the lease was automatically extended to 66 years under the terms of the original lease; the amendment specifying a 66-year period was merely a "mechanical" chore of the parties. If the assessor had any doubts about the term of the lease he only needed to wait less than a month to learn the result of the election. In fact, the assessor waited approximately two years before issuing his first valuation of the lease and, when he issued it, he recognized the lease was for a term of 66 years.

Thus, there is no merit to the assessor's argument he was forced to consider the lease term to be 40 years because that was the period provided for in the original lease between Wrather and the City of Long Beach and the maximum period authorized by law. The facts show the assessor *never* considered the lease term to be 40 years and *never* based his valuation on a 40-year term.

The County's second justification for treating an extension of the lease term as a change in ownership is that otherwise the lessee of a possessory interest could escape fair taxation by parlaying a short term low-value lease into a long term high-value lease by specifying an initial short term with an option for a much longer term.

Again, this justification does not fit with the facts of the lease at issue here. As the assessor has conceded, Wrather and the City of Long Beach

entered into a 66-year lease, not a one-year lease with a 65-year option. Furthermore, the County made this same argument in the *American Airlines* case where it was firmly rejected. "It is completely fatuous to imagine that a tax-exempt lessor will agree to a leasing scheme of such a form as to deprive itself of the tax revenues from which it would benefit if the leased property were assessed at its full value." (65 Cal.App.3d at p. 331.) The court also pointed out a lessee who must make considerable financial investments in the leased premises, as was the case with Wrather in the matter before us, is unlikely to risk its investment on the strength of its belief a short term lease will be extended long enough to amortize its investment, just to avoid taxes. (*Ibid.*) Finally, there is ample authority allowing the assessor to ignore such a sham transaction. (See the "option" cases, cited *ante,* and Board regulation 23, *supra,* which provides, "An option period shall be considered part of the stated period if it is reasonable to conclude that the option will be exercised." (Cal. Code Regs., tit. 18, § 23, subd. (a).)

Under the facts of this case, the trial court properly concluded the extension of the lease between Wrather and the City of Long Beach did not constitute a change in ownership.

DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Woods (Fred), J., concurred.