[No. C052818. Third Dist. Oct. 2, 2007.]

MICHAEL V. STRONG, as Assessor, etc., Plaintiff and Appellant, v. STATE BOARD OF EQUALIZATION, Defendant and Respondent; TOM KIDWELL, as Assessor, etc., Intervener and Appellant; EQUALITY CALIFORNIA et al., Interveners and Respondents.

1184

**COUNSEL**

Ronald S. Erickson, County Counsel, for Plaintiff and Appellant.

Allen A. Haim and Douglas J. Maloney for California Assessors' Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Best, Best & Krieger, Daniel P. Neal; Cota Duncan & Cole and Dennis M. Cota for Intervener and Appellant.

Edmund G. Brown, Jr., Attorney General, William L. Carter and George C. Spanos, Deputy Attorneys General, for Defendant and Respondent.

Munger, Tolles & Olson, Paul J. Watford, Michelle Friedland and Daniel J. Powell; National Center for Lesbian Rights, Shannon Minter, Vanessa H. Eisemann, Melanie Rowan; Lambda Legal Defense and Education Fund, Jennifer C. Pizer and F. Brian Chase for Interveners and Respondents.

OPINION

**SCOTLAND, P. J.**—The State Board of Equalization has promulgated a rule that grants to registered domestic partners certain property tax relief afforded to spouses. County assessors unsuccessfully challenged the rule in the trial court and now appeal, arguing that it is unconstitutional. We disagree.

In 1978, voters adopted Proposition 13, a constitutional amendment, which limits the amount of ad valorem tax assessed on real property unless there has been a "change in ownership." After the Legislature defined such a change of ownership to exclude, among other things, real property transfers between spouses, the voters adopted Proposition 58, placing the spousal transfer exclusion in the state Constitution. The State Board of Equalization (the Board) then promulgated a rule excluding from the definition of change of ownership a transfer of real property to a registered domestic partner via intestate succession upon the death of the person's registered domestic partner. Thereafter, the Legislature amended the statutory scheme to limit change of ownership by excluding any real property transfers between registered domestic partners from the reassessment of full cash value for property tax purposes.

Plaintiff and appellant and intervener and appellant (plaintiffs) who are county assessors, filed an action for declaratory relief, asserting that neither the Legislature nor the Board had the authority to create the registered domestic partner exclusion from classification as a change in ownership.

As we will explain, the trial court correctly held (1) the Legislature can create an exclusion from "change in ownership" for registered domestic partners, without violating the California Constitution, (2) when the Legislature amended provisions of the Family Code and Revenue and Taxation Code, it ratified the Board's rule excluding certain real property transfers between registered domestic partners from the property tax reassessment provisions of Proposition 13, and (3) accordingly, the Board's rule is not unconstitutional.

## CONSTITUTIONAL AND STATUTORY BACKGROUND

■ Article XIII, section 1 of California's Constitution provides that all property in this state is taxable unless exempted from taxation pursuant to California's Constitution or federal law. The passage of Proposition 13 limited the maximum amount of any ad valorem tax on real property to 1 percent of its

"full cash value," with annual adjustments for inflation at a maximum rate of 2 percent per year. (Cal. Const., art. XIII A, §§ 1, subd. (a), 2, subd. (b).) "Full cash value" is defined as the county assessor's valuation of the property on the 1975–1976 tax bill "or, thereafter, the appraised value of real property when purchased, newly constructed, or a *change in ownership* has occurred after the 1975 assessment." (Cal. Const., art. XIII A, § 2, subd. (a), italics added.)

Because "Proposition 13 did not explicate the meaning of 'change in ownership' . . . , it fell to the Legislature to define the phrase . . . ." (*Pacific Southwest Realty Co. v. County of Los Angeles* (1991) 1 Cal.4th 155, 160–161 [2 Cal.Rptr.2d 536, 820 P.2d 1046], citations omitted (hereafter *Pacific Southwest*).) A task force studied the matter and, on January 22, 1979, submitted to the Assembly Committee on Revenue and Taxation a report of the Task Force on Property Tax Administration. (*Ibid.*) The report made various recommendations, which resulted in the enactment of certain Revenue and Taxation Code provisions. (*Id.* at pp. 161–162; further section references are to the Revenue and Taxation Code unless otherwise specified.)[1]

Section 60 defines "change in ownership" as "a transfer of a present interest in real property, including the beneficial use thereof, the value of which is substantially equal to the value of the fee interest." Section 61 contains examples of what *is* a change in ownership, and section 62 contains examples of what is *not* a change in ownership. Sections 62.1 through 69 contain exclusions from a change in ownership, including certain transfers of mobilehome parks (§§ 62.1, 62.2), interspousal transfers (§ 63), and certain transfers between parents and children, or grandparents and grandchildren (§ 63.1).

In 1986, the voters passed Proposition 58, which enshrined in the state Constitution the exclusions for interspousal transfers of real property, and such transfers between parents and children. (Cal. Const., art. XIII A, § 2, subds. (g), (h)(1).)[2] The argument in favor of Proposition 58 acknowledged that the protection against reappraisal of property transferred between spouses already was the law by statute, but asserted that constitutional protection should be afforded because "(1) Some attorneys have argued that the statutory protection is unconstitutional. [¶] (2) Constitutional protection is more secure as it can only be changed by another vote of the people." (Ballot Pamp., Gen.

---

[1] At plaintiffs' request, we take judicial notice of the task force report. (Evid. Code, §§ 452, subd. (h), 459; *Empire Properties v. County of Los Angeles* (1996) 44 Cal.App.4th 781, 788, fn. 2 [52 Cal.Rptr.2d 69].)

[2] The exclusion for transfers between grandparents and grandchildren was added to the Constitution in 1996. (Cal. Const., art. XIII A, § 2, subd. (h)(2); Assem. Const. Amend. No. 17, Stats. 1994 (1993–1994 Reg. Sess.) res. ch. 110, p. 8478, approved by voters, Primary Elec. (Mar. 26, 1996).)

Elec. (Nov. 4, 1986) argument in favor of Prop. 58, p. 26.)[3] As for the exclusion for transfers between parents and children, the argument in favor of Proposition 58 premised its position on the protection of the family. (Ballot Pamp., Gen. Elec., *supra*, argument in favor of Prop. 58, p. 26.)

■ In 2003, the Board, which is authorized to adopt rules and regulations governing equalization (Gov. Code, § 15606, subd. (c)), amended its rule enumerating exclusions from a change in ownership for purposes of property tax reassessment. (Cal. Code Regs., tit. 18, § 462.240 (hereafter rule 462.240).) ■ It did so by adding subdivision (k) to rule 462.240 to exclude "[a]ny transfer of separate property inherited by a surviving domestic partner . . . by intestate succession upon the death of a registered domestic partner."

In 2005, this exclusion by rule was expanded when the Legislature added subdivision (p) to section 62, to create an exclusion from "change in ownership" for "any transfer between registered domestic partners," commencing with the lien date for the 2006–2007 fiscal year.[4] (Stats. 2005, ch. 416, § 2.) The exclusion added by section 62, subdivision (p) mirrors the language of the spousal exclusion in California's Constitution. In enacting this exclusion, the Legislature noted that "[m]any lesbian, gay, and bisexual Californians continue to face economic discrimination, despite forming lasting, committed, and caring relationships with persons of the same sex according to the laws of this state. These couples build lives together, as do spouses, by purchasing property and creating and operating family businesses.

---

[3] At the Board's request, we take judicial notice of the ballot materials for Propositions 13 and 58 as accepted indicia of the voters' intent and understanding of initiative measures. (*Penner v. County of Santa Barbara* (1995) 37 Cal.App.4th 1672, 1677 [44 Cal.Rptr.2d 606]; *Mobilepark West Homeowners Assn. v. Escondido Mobilepark West* (1995) 35 Cal.App.4th 32, 42, fn. 6 [41 Cal.Rptr.2d 393].)

[4] Section 62 provides in pertinent part: "Change in ownership shall not include: [¶] . . . [¶] (p) Commencing with the lien date for the 2006–07 fiscal year, any transfer between registered domestic partners, as defined in Section 297 of the Family Code, including, but not limited to: [¶] (1) Transfers to a trustee for the beneficial use of a registered domestic partner, or the surviving registered domestic partner of a deceased transferor, or by a trustee of such a trust to the registered domestic partner of the trustor. [¶] (2) Transfers that take effect upon the death of a registered domestic partner. [¶] (3) Transfers to a registered domestic partner or former registered domestic partner in connection with a property settlement agreement or decree of dissolution of a registered domestic partnership or legal separation. [¶] (4) The creation, transfer, or termination, solely between registered domestic partners, of any coowner's interest. [¶] (5) The distribution of a legal entity's property to a registered domestic partner or former registered domestic partner in exchange for the interest of the registered domestic partner in the legal entity in connection with a property settlement agreement or a decree of dissolution of a registered domestic partnership or legal separation."

Expanding the rights of registered domestic partners with respect to property ownership would further California's interests in promoting family relationships and protecting family members during life crises, and would reduce discrimination on the bases of sex and sexual orientation in a manner consistent with the California Constitution." (Stats. 2005, ch. 416, § 1(d).)

Thus, the Legislature broadened the exclusion in rule 462.240 to include not only transfers occurring by intestate succession as the result of the death of a registered domestic partner, but also to transfers between registered domestic partners during life.

The Legislature explained that the exclusion set forth in subdivision (p) of section 62 is intended "to guarantee equality for all Californians, regardless of gender or sexual orientation, and to further the state's interests in protecting Californians from the potentially severe economic and social consequences of abandonment, separation, the death of a partner, and other life crises. [¶] . . . To this end, the Legislature has enacted various statutes in an attempt to move California closer to fulfilling the promises of inalienable rights, liberty, and equality contained in Sections 1 and 7 of Article I of the California Constitution." (Stats. 2005, ch. 416, § 1(a), (b).)

The Legislature made even more changes in the California Domestic Partner Rights and Responsibilities Act of 2003 (the Act), which did not become operative until January 1, 2005. (Fam. Code, § 297.5; Stats. 2003, ch. 421, §§ 2, 14.)[5] Family Code section 297.5, subdivision (a) states: "Registered domestic partners shall have the same rights, protections, and benefits, and shall be subject to the same responsibilities, obligations, and duties under law, whether they derive from statutes, administrative regulations, court rules, government policies, common law, or any other provisions or sources of law, as are granted to and imposed upon spouses. [¶] . . . [¶] (c) A surviving registered domestic partner, following the death of the other partner, shall have the same rights, protections, and benefits, and shall be subject to the same responsibilities, obligations, and duties under law, whether they derive from statutes, administrative regulations, court rules, government policies, common law, or any other provisions or sources of law, as are granted to and imposed upon a widow or a widower."

---

[5] At the request of plaintiffs and the Board, we take judicial notice of the legislative history underlying Assembly Bill No. 205 (2003–2004 Reg. Sess.); and at the Board's request, we take judicial notice of the chaptered versions of Assembly Bill Nos. 25 (2003–2004 Reg. Sess.), 26 (2003–2004 Reg. Sess.), 205 and 2216 (2003–2004 Reg. Sess.).

The Legislature "specified that the Act 'is not intended to repeal or adversely affect any other ways in which relationships between adults may be recognized or given effect in California, or the legal consequences of those relationships, including, among other things, civil marriage' [citation], and it 'does not amend or modify any provision of the California Constitution or any provision of any statute that was adopted by initiative.' [Citation.]" (*Knight v. Superior Court* (2005) 128 Cal.App.4th 14, 21 [26 Cal.Rptr.3d 687]; see Fam. Code, § 297.5, subd. (i).)

With this framework in mind, we turn to plaintiffs' challenges to the Board's rule 462.240.

## DISCUSSION

Plaintiffs contend that rule 462.240 exceeds the Board's rulemaking authority because when the Board added subdivision (k) to the rule in 2003, there was no statutory or constitutional authority for it to exclude transfers between registered domestic partners by intestate succession from the definition of "change in ownership" contained in section 60. Therefore, plaintiffs argue, the Board impermissibly enlarged the scope of Proposition 13 and the Revenue and Tax Code sections that the Board is charged with administering. (See *Helene Curtis, Inc. v. Assessment Appeals Bd.* (1999) 76 Cal.App.4th 124, 129 [90 Cal.Rptr.2d 31] [administrative regulations are void if they alter or amend the statute or enlarge or impair its scope]; Gov. Code, § 11342.2.)

We note that plaintiffs do not assert they were wrongfully precluded by rule 462.240, subdivision (k) from reassessing properties that were transferred via intestate succession between registered domestic partners after the Board added subdivision (k) to rule 462.240 but before subdivision (p) of Revenue and Taxation Code section 62 became effective. They simply contend that although the Legislature, by subsequent action, can ratify and approve a regulation adopted in excess of an administrative agency's power (*Yeoman v. Department of Motor Vehicles* (1969) 273 Cal.App.2d 71, 80 [78 Cal.Rptr. 251]), no valid ratification occurred here because the Legislature has no authority to ratify an unconstitutional rule.

In plaintiffs' view, an exclusion from "change in ownership" for transfers via intestate succession between registered domestic partners violates the California Constitution regardless of whether the Board or the Legislature

grants the exclusion. Plaintiffs argue that the Legislature does not have unfettered discretion to create exclusions from the change of ownership provision of Proposition 13, and may not do so solely to implement social policy considerations concerning domestic partners.

Thus, on appeal, as in the trial court, plaintiffs' sole claim is that rule 462.240, subdivision (k) is invalid because "an exception to a change in ownership [for registered domestic partners] that does not conform to the definition of change in ownership found in Revenue and Taxation Code section 60 may be accomplished only by constitutional amendment." We limit our review accordingly.[6]

A

Plaintiffs' position is premised in large part on the California Supreme Court's decision in *Pacific Southwest, supra,* 1 Cal.4th 155, and the task force report (see p. 1187, *ante*) that made recommendations to the Legislature on the implementation of Proposition 13, including the definition of "change in ownership" in section 60.

*Pacific Southwest* addressed whether the Legislature intended a specific transfer to be encompassed by one of the examples of tax-exempt transfers set forth in section 62. (*Pacific Southwest, supra,* 1 Cal.4th at pp. 159, 166–168.) The Supreme Court found that the Legislature intended section 60 to provide the "overarching definition of a 'change in ownership' for reassessment purposes," and that because sections 60, 61, and 62 are in pari materia, they must be construed together. (1 Cal.4th at pp. 162, 167.) The court observed that the task force report recommended that the general definition in section 60 control *all* transfers, and that specific statutory examples be given

---

[6] Amicus curiae, the California Assessors' Association (CAA), attempts to expand the scope of plaintiffs' argument to include claims that the rule's validity must be determined at the time it was promulgated and, if it was void, it cannot be resurrected by a subsequent act of the Legislature; and if the Legislature intended to ratify rule 462.240, subdivision (k), it would not have made the amendment of section 62 prospective. But " 'Amicus curiae must accept the issues made and propositions urged by the appealing parties, and any additional questions presented in a brief filed by an amicus curiae will not be considered [citations].' " (*Pratt v. Coast Trucking, Inc.* (1964) 228 Cal.App.2d 139, 143 [39 Cal.Rptr. 332], quoting *Eggert v. Pacific States S. & L. Co.* (1943) 57 Cal.App.2d 239, 251 [136 P.2d 822].) Thus, we need not address CAA's additional contentions since they were not raised in the trial court and have not been presented by plaintiffs on appeal. (*California Assn. for Safety Education v. Brown* (1994) 30 Cal.App.4th 1264, 1274–1275 [36 Cal.Rptr.2d 404].)

of what is and is not a change in ownership, which examples are set forth in sections 61 and 62. (1 Cal.4th at p. 161.) However, the task force stressed that these examples be consistent with section 60's general test, noting " '[t]he entire statutory design would be destroyed by providing statutory treatment for specific transfers which are inconsistent with the general test. In that case, the general test would be overruled by the specific rules and the entire statutory design might be held invalid because of the lack of any consistent, rational interpretation of the constitutional phrase, "change in ownership." ' [Citation.]" (1 Cal.4th at pp. 161–162.)

██  This language of *Pacific Southwest* does not suggest the Legislature can never create exemptions from the definition of "change in ownership" enacted by the Legislature in section 60. To the contrary, *Pacific Southwest* plainly indicated that the scope of the phrase "change in ownership" is a matter for the Legislature to decide. (*Pacific Southwest, supra,* 1 Cal.4th at pp. 160–162.) Viewed in context, the task force language quoted in *Pacific Southwest* merely reflects the task force's concern with a potential legal attack if the phrase "change in ownership" is defined vaguely and inconsistently, not with any limitation on the Legislature's ability to create exemptions for rational policy reasons.

Under the task force's logic, the Legislature should not have placed the exemption for registered domestic partner transfers in section 62 because that statute is supposed to provide examples of what is not a change in ownership, consistent with the general test in section 60. (*Pacific Southwest, supra,* 1 Cal.4th at p. 166 ["the drafters intended section 62 to provide 'examples' of common applications of section 60 rather than exceptions to it"].) Instead, the Legislature should have placed the exemption in a separate statute, like it did for interspousal transfers, clarifying that it is an exception to the definition of a change in ownership. However, any "misplacement" of the exemption within the statutory scheme does not make it invalid since that would elevate form over substance. (See Civ. Code, § 3528.)

B

Here, unlike in *Pacific Southwest*, there is no question about the Legislature's intent because the exemption in subdivision (p) of section 62 unambiguously applies to *any* transfer of real property between registered domestic partners. The sole issue is whether the Legislature has the constitutional authority to create an exemption for transfers between such domestic partners.

In answering this question, we rely on fundamental principles of constitutional adjudication discussed by the California Supreme Court in *Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168 [172 Cal.Rptr. 487, 624 P.2d 1215].

"'Unlike the federal Constitution, which is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature. [Citations.] Two important consequences flow from this fact. First, the entire law-making authority of the state, except the people's right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers *which are not expressly, or by necessary implication denied to it by the Constitution.* [Citations.] . . . [¶] Second[], all intendments favor the exercise of the Legislature's plenary authority: "If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. *Such restrictions and limitations [imposed by the Constitution] are to be construed strictly, and are not to be extended to include matters not covered by the language used.*" [Citations.]' (Italics added.) [Citation.]

"Moreover, . . . past cases establish that the presumption of constitutionality accorded to legislative acts is particularly appropriate when the Legislature has enacted a statute with the relevant constitutional prescriptions clearly in mind. [Citation.] In such a case, the statute represents a considered legislative judgment as to the appropriate reach of the constitutional provision. Although the ultimate constitutional interpretation must rest, of course, with the judiciary [citation], a focused legislative judgment on the question enjoys significant weight and deference by the courts." (*Pacific Legal Foundation v. Brown, supra,* 29 Cal.3d at p. 180; accord, *Alexander v. State Personnel Bd.* (2000) 80 Cal.App.4th 526, 534–535 [95 Cal.Rptr.2d 324].)

The underlying purpose and chief aim of Proposition 13 was real property tax relief. (*Board of Supervisors v. Lonergan* (1980) 27 Cal.3d 855, 863 [167 Cal.Rptr. 820, 616 P.2d 802].) As relevant to this appeal, Proposition 13 amended California's Constitution to provide that "[t]he maximum amount of any ad valorem tax on real property shall not exceed One percent (1%) of the full cash value of such property" and "full cash value" is as shown on the 1975–1976 tax bill "or, thereafter, the appraised value of real property when . . . a change in ownership has occurred after the 1975 assessment." (Cal. Const., art. XIII A, §§ 1, subd. (a), 2, subd. (a).) In interpreting this language, we look to the plain language and give the words used their usual and ordinary meanings. (*Pacific Southwest, supra,* 1 Cal.4th at p. 167; *Penner v. County of Santa Barbara, supra,* 37 Cal.App.4th at p. 1677.)

■ The plain language of Proposition 13 limits property tax increases absent certain conditions, but does not *require* an increase in taxes if those conditions exist. (*Pacific Southwest, supra,* 1 Cal.4th at p. 159 ["[w]hen ownership changes, the property may be reassessed at its current market value"]; *Wrather Port Properties, Ltd. v. County of Los Angeles* (1989) 209 Cal.App.3d 517, 521 [257 Cal.Rptr. 266] [Proposition 13 "permits reassessment of real property for property tax purposes when a 'change in ownership has occurred' "].) Proposition 13 does not expressly, or by necessary implication, preclude the Legislature from creating exemptions from the phrase "change in ownership"; it simply provides that taxes "shall not exceed" a set amount unless there has been a change in ownership.

For policy reasons, the Legislature has exempted various transfers even though they otherwise would fit the definition of a "change in ownership" in section 60. The Legislature has the authority to do so. " 'In the field of taxation, the states enjoy wide "latitude . . . in the classification of property . . . and the granting of partial or total exemptions upon grounds of policy." ' [Citation.] 'So long as a system of taxation is supported by a rational basis, and is not palpably arbitrary, it will be upheld despite the absence of " 'a precise, scientific uniformity' " of taxation.' [Citation.]" (*Munkdale v. Giannini* (1995) 35 Cal.App.4th 1104, 1114 [41 Cal.Rptr.2d 805].)

For example, in order to facilitate conversions of mobilehome parks to tenant ownership, thereby maintaining affordable housing for the tenants, the Legislature has excluded from a change of ownership the transfer of a mobilehome park, directly or indirectly, to an entity formed by the tenants to purchase the park. (§§ 62.1, 62.2; Stats. 1984, ch. 1692, § 2, pp. 6114–6115.) The Legislature also has excluded transfers between spouses, whether upon marriage, dissolution, or death (§ 63), an exclusion that was later added to California's Constitution by Proposition 58. In section 62, subdivision (p), the Legislature has opted to grant registered domestic partners an equivalent exemption to that for interspousal transfers.

■ The exclusion for registered domestic partners is not palpably arbitrary and is supported by a rational basis. As the Legislature declared in amending section 62, it intended "to guarantee equality for all Californians, regardless of gender or sexual orientation, and to further the state's interests in protecting Californians from the potentially severe economic and social consequences of abandonment, separation, the death of a partner, and other life crises." (Stats. 2005, ch. 416, § 1, subd. (a); see *id.,* § 1, subd. (b).)

## C

Plaintiffs and amicus curiae, the CAA, insist that any exclusion for transfers between registered domestic partners constitutes an impermissible end run around Proposition 58, which grants an exclusion from a change in ownership only to married spouses. (*Knight v. Superior Court, supra*, 128 Cal.App.4th at pp. 30–31.) They argue that social policy may not be used to expand this constitutional exclusion.

■  Plaintiffs and CAA misconstrue the effect of Proposition 58. That constitutional amendment did not alter the Legislature's ability to exclude certain transfers from a change in ownership for purposes of Proposition 13; rather, Proposition 58 merely precludes the Legislature from eliminating the interspousal transfer exemption without voter approval. (Cal. Const., art. II, § 10, subd. (c) ["[t]he Legislature . . . may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without their approval"].)

■  Proposition 58 contains no limiting language declaring that only transfers between spouses shall be entitled to an exemption from a "change in ownership" within the meaning of Proposition 13. And there is nothing in the ballot materials remotely suggesting that Proposition 58 was designed to ensure that the Legislature did not grant such an exemption to registered domestic partners. "[W]e may not properly interpret the measure in a way that the electorate did not contemplate: the voters should get what they enacted, not more and not less." (*Hodges v. Superior Court* (1999) 21 Cal.4th 109, 114 [86 Cal.Rptr.2d 884, 980 P.2d 433].)

Contrary to plaintiffs' assertion otherwise, Propositions 13 and 58 do not require that exclusions from a "change in ownership" for purposes of Proposition 13 be added only by constitutional amendment. Because the Legislature has the power to define the scope of "change in ownership" and to create exclusions from the general definition for nonarbitrary, rational policy reasons, the trial court correctly ruled that the Board's rule 462.240, subdivision (k) was ratified by the Legislature's addition of subdivision (p) to section 62.[7]

---

[7] In light of this conclusion, we need not address intervening defendant Equality California's argument that failing to extend an exclusion from a "change in ownership" to transfers between registered domestic partners violates the principles of equal protection of the law.

The judgment is affirmed.

Davis, J., and Hull, J., concurred.

The petition of appellant Michael V. Strong for review by the Supreme Court was denied January 3, 2008, S158149. Werdegar, J., did not participate therein.