Filed 7/18/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| OLIVE LANE INDUSTRIAL PARK, LLC et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> COUNTY OF SAN DIEGO, <br><br> Defendant and Respondent. | D063337 <br><br><br> (Super. Ct. No. 37-2011-00071151-CU-MC-EC) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge. Reversed and remanded for further proceedings.

Law Offices of Andre Vanier and Andre Vanier; Kassouni Law and Timothy V. Kassouni, for Plaintiffs and Appellants.

Thomas E. Montgomery, County Counsel, Walter J. DeLorrell III, Senior Deputy County Counsel, for Defendant and Respondent.

Olive Lane Industrial Park ("Olive Lane") owned real property that was taken by eminent domain. Within four years after the eminent domain order, Olive Lane acquired

another parcel of property.[1]  About five and one-half years after the eminent domain order, for purposes of calculating property taxes on its new property, Olive Lane filed a request with the San Diego County tax assessor (County) to transfer the condemned property's base year value to the replacement property, as permitted by California Constitution, article XIIIA (Article XIIIA).  The County denied Olive Lane's request as untimely under Revenue and Taxation Code section 68.[2]

Article XIIIA, enacted through the adoption of Proposition 13, provided broad scale property tax relief by restructuring the manner in which property taxes are calculated.  Proposition 13 "rolled back" the valuations of the property (the base year value) to the 1975-1976 tax year; placed a cap on the percentage of the base year value that was taxable; and then allowed increases in the base year value to the current market value only in certain situations, including when there is a "change in ownership" of the property.  Following Proposition 13, the voters adopted several other propositions that extended the property tax relief by removing specific transactions from the change-in-ownership category that permits increases in base year value and ensuing increases in the property taxes.  Among these additional propositions adopted by the voters, Proposition 3

---

[1]     Appellants are denominated as "Olive Lane Industrial Park, LLC, a California Corporation" and "Olive Lane Industrial Park, GP, a California General Partnership." The parties dispute whether these two entities are the same owner for purposes of the property tax relief at issue in this case, and whether San Diego County should be estopped from claiming they are not the same owner.  The trial court did not resolve these matters, and we do not reach them in this appeal because they include factual issues.  For convenience, we refer to appellants collectively as Olive Lane, but express no opinion on matters related to this ownership issue.

[2]     Subsequent statutory references are to the Revenue and Taxation Code.

amended Article XIIIA to provide that property acquired to replace property taken by eminent domain does *not* constitute a change in ownership that permits base year value reassessment.

The Legislature, in turn, enacted section 68 to set a time limit on the exercise of the Proposition 3 exclusion. Section 68 provides the taxpayer shall file a request for the transfer of the base year value to an eminent domain replacement property within four years after the eminent domain order, and allows for *retroactive* application of the transferred base year value based on the date of acquisition of the replacement property. Thus, section 68 addresses the situation where a taxpayer, within four years after the eminent domain order, both (1) acquires the replacement property, and (2) files a claim with the County for the transfer of the condemned property's base year value to the replacement property. However, section 68 is silent on whether a taxpayer, such as Olive Lane, may obtain *prospective* application of the base year value transfer in the event the replacement property is acquired within the four-year period, but the claim with the County is filed *after* the four-year period.

After evaluating the constitutional and statutory provisions as a whole, we conclude the Legislature did not intend to deprive a taxpayer who loses property through eminent domain of the right to obtain prospective application of the base year value transfer in the event the replacement property is acquired within the four-year period but the claim is filed after the four-year period. Accordingly, we reverse the judgment and remand the matter for further proceedings.

3

BACKGROUND

On July 8, 2003, a final condemnation order was recorded that relinquished Olive Lane's real property to the California Department of Transportation in eminent domain proceedings. On December 14, 2006 (about three and one-half years after the eminent domain order), Olive Lane purchased another parcel of land. Based on the 2006 purchase, the base year value for the land was assessed at $2,025,000. In 2008, Olive Lane completed new construction on the land. Thereafter, on December 18, 2008 (about five and one-half years after the eminent domain order), Olive Lane filed a claim with the County requesting that the property tax base year value of the condemned property be transferred to the land it acquired in 2006 as a replacement property. Olive Lane maintained that the base year value for the replacement property should be $651,810 (plus adjustments for inflation) instead of $2,025,000.[3]

On December 19, 2008, the County denied the request, stating it was untimely because it was not filed within four years of the July 8, 2003 eminent domain order as required by section 68. On November 30, 2009, Olive Lane appealed the denial of its claim to the County Assessment Appeals Board. At a hearing on February 15, 2011, the board denied the appeal.

After unsuccessfully pursuing its administrative remedies, Olive Lane timely filed a complaint in superior court requesting that the County be ordered to grant its base year

[3] Olive Lane's base year value transfer request applies to the *land* acquired in 2006, which was purchased within the four-year time limitation. The new construction (which was finished in 2008) was not included in the base year value transfer request, apparently because it exceeded the statutory cap on the amount of the permissible base year value transfer. (§ 68 [base year value may be transferred up to 120 percent of the value of the condemned property].)

4

value transfer claim and to refund the excess property taxes it had paid. Olive Lane argued that section 68's time limitation was unconstitutional because it contradicted the provision in Article XIIIA that removed eminent domain replacement property from the change-in-ownership category that permits base year value reassessments. Alternatively, Olive Lane asserted that, given the constitutional provision, it was unreasonable to interpret section 68 in a manner that denied even prospective relief to eminent domain replacement property claims filed after the deadline. In opposition, the County argued section 68's time limitation was a reasonable regulation of the constitutional provision. Alternatively, the County asserted the property purchased in 2006 did not qualify as a replacement property because it was acquired by a different owner than the owner of the condemned property.

In October 2012, the trial court entered a judgment in favor of the County, ruling the Legislature has the power to set reasonable time limitations for the exercise of constitutional rights, and the four-year time limitation was reasonable. In its written ruling, the court stated: "I understand that given the particular facts and circumstances of this case that plaintiff may not perceive it to be reasonable, that from plaintiff's perspective, there were extenuating circumstances that should warrant the statute being extended or relief being given to estop the County from imposing a[s] short a time frame as four years upon plaintiff. [¶] But given the totality of the circumstances, generally speaking, the Court finds that four-year statute of limitations is reasonable." Based on its ruling premised on the limitations period, the court declined to address the County's

5

additional argument that Olive Lane was not entitled to relief because the owners of the condemned property and the replacement property were different.

## DISCUSSION

On appeal, the parties reiterate the assertions they made before the trial court, with Olive Lane arguing that section 68's time limitation unconstitutionally conflicts with Article XIIIA, and the County asserting the time limitation is a reasonable regulation of the constitutional provision. We first summarize the relevant law, including the constitutional provision applicable to eminent domain takings, and the constitutional and statutory provisions that govern property taxation after the adoption of Proposition 13.

### I. *Overview of the Governing Law*

When the government takes property by eminent domain, the property owner is constitutionally entitled to just compensation, which means the " 'owner shall be put in as good position pecuniarily as he would have been if his property had not been taken.' " (*Redevelopment Agency v. Gilmore* (1985) 38 Cal.3d 790, 797, italics omitted; Cal. Const., art. I, § 19, subd. (a).) The constitutionally-required just compensation is generally determined by the fair market value of the property, and it does not typically include "losses or expenses which are merely consequential to displacement or relocation." (*Redevelopment Agency v. Gilmore, supra*, at pp. 802-803.) Recognizing that eminent domain just compensation awards might not include compensation for increased property taxes, in 1982 the voters approved Proposition 3, which amended the California Constitution to provide relief from increased property taxes on property acquired to replace property taken by eminent domain. (Ballot Pamp., Primary Elec.

6

(June 8, 1982) analysis of Prop. 3 by the Legislative Analyst, p. 12 ["[T]he amount of compensation provided property owners displaced by governmental action is limited to the fair market value of the property plus certain other amounts, including relocation expenses. This amount of compensation [under prior law], however, does *not* include any amount for increased property taxes that the owner must pay on a replacement property."].)[4]

Proposition 3, along with a number of other propositions, was adopted in the aftermath of Proposition 13's constitutional enactment providing broad-scale real property tax relief. The changes accomplished by Proposition 13 and the ensuing propositions are set forth in Article XIIIA. Under Proposition 13, real property taxes are limited to a maximum of 1 percent of the base year value, with a maximum 2 percent annual increase for inflation. (Art. XIIIA, §§ 1, subd. (a), 2, subd. (b); *Strong v. State Bd. of Equalization* (2007) 155 Cal.App.4th 1182, 1186-1187; *Duea v. County of San Diego* (2012) 204 Cal.App.4th 691, 693.) The base year value is set at the assessor's fair market valuation as of the 1975-1976 tax year, and thereafter the base year value may be increased to the current fair market value only upon a purchase, change in ownership, or new construction. (Art. XIIIA, § 2, subd. (a); *Strong v. State Bd. of Equalization, supra*, 155 Cal.App.4th at p. 1187.)

Through several propositions adopted after Proposition 13, Article XIIIA was further amended to allow for extension of the property tax relief to certain types of transactions; i.e., these transactions are excluded from reassessment so that the base year

---

4      The California Ballot Pamphlet is available at: http://librarysource.uchastings.edu/ballot_pdf/1982p.pdf as of July 18, 2014.

value remains with, or transfers to, the property and there is no increase in taxes. (See *Wunderlich v. County of Santa Cruz* (2009) 178 Cal.App.4th 680, 690-691 & fn. 5.) The excluded transactions set forth in the Constitution include a transfer of the same property between parents and children, and a purchase of a different property to replace property taken by eminent domain, destroyed in a disaster, contaminated, or acquired by a person over age 55 or severely disabled. (Art. XIIIA, § 2, subds. (a), (d), (e), (h), (i).)

For several of these exclusions, including for replacement property after eminent domain takings and for transfers between parents and children, Article XIIIA affirmatively states the transactions are *not included* in the term "change in ownership" that permits base year value reassessment. (Art. XIIIA, § 2, subds. (d), (h).) Relevant here, the eminent domain constitutional exclusion provision states: "For purposes of this section, *the term 'change in ownership' does not include the acquisition of real property as a replacement for comparable property if the person acquiring the real property has been displaced from the property replaced by eminent domain proceedings*, by acquisition by a public entity, or governmental action that has resulted in a judgment of inverse condemnation. The real property acquired shall be deemed comparable to the property replaced if it is similar in size, utility, and function, or if it conforms to state regulations defined by the Legislature governing the relocation of persons displaced by governmental actions. . . ." (Art. XIIIA, § 2, subd. (d), italics added.) Similarly, the parent-child constitutional exclusion provision states: "For purposes of subdivision (a), the terms 'purchased' and *'change in ownership' do not include the purchase or transfer* of the principal residence of the transferor in the case of a purchase or transfer *between*

8

*parents and their children*, as defined by the Legislature, *and the purchase or transfer of the first one million dollars* ($1,000,000) of the full cash value of all other real property *between parents and their children*, as defined by the Legislature. . . ." (Art. XIIIA, § 2, subd. (h)(1); italics added.)

Article XIIIA contains no time requirements for enforcement of either the eminent domain replacement property exclusion or the parent-child exclusion. However, time limitations are set forth in the Revenue and Taxation Code. Concerning the eminent domain exclusion, section 68 sets forth a four-year time period for filing a request for assessment of a property as a replacement property, stating: "Persons acquiring replacement property . . . *shall request assessment within four years* of the date the property was acquired by eminent domain . . . ." (§ 68, subd. (b), italics added.) Further, section 68 allows for retroactive application of the base year value, stating the transferred base year value for the replacement property shall be effective "*on the first day of the month following the month in which the property is acquired*."[5] (*Ibid.*, italics added.) The section 68 time limitation is also set forth in an administrative regulation that states

---

[5]     For the eminent domain exclusion, section 68 states: "Persons . . . *shall request assessment within four years of the date the property was acquired by eminent domain* or purchase or the date the judgment of inverse condemnation becomes final. [¶] *Any change in the adjusted base year value of the replacement property acquired, resulting from the application of the provisions of this section, shall be deemed to be effective on the first day of the month following the month in which the property is acquired*. . . ." (§ 68, subd. (b), italics added.)

the four-year period commences upon the recording of the condemnation order. (Cal. Code Regs., tit. 18, § 462.500, subd. (g).)[6]

For the parent-child exclusion, the code states an eligibility claim shall be filed (1) within three years after the transfer, or (2) within six months after the mailing of a notice of supplemental or escape assessment. (§ 63.1, subd. (e)(1)(B), (C).) Further, the code provides that if a parent-child exclusion claim is filed *subsequent* to the expiration of these filing periods, the assessor shall consider the claim, except the exclusion shall apply prospectively (i.e., commencing in the assessment year in which the claim is filed). (§ 63.1, subd. (e)(2)(A).)[7]

---

[6] This regulation states: "Time Limits for Qualification. [¶] (1) The provisions of this section shall apply to property acquired as replacement property for property taken by eminent domain proceedings . . . provided the person acquiring replacement property makes a timely request for such assessment with the assessor. The replacement property must be acquired before a request is made. Reassessments and refunds shall be made retroactively to the date of acquisition of replacement property for property taken, provided a timely request is made therefor. [¶] (2) For purposes of this section, a request shall be deemed timely if made within four years after one of the following dates, whichever is applicable: [¶] (A) The date final order of condemnation is recorded . . . ." (Cal. Code Regs., tit. 18, *supra*, § 462.500, subd. (g).)

[7] For the parent-child exclusion, section 63.1, subdivision (e) states: "(1) . . . Except as provided in paragraph (2), any claim under this section shall be filed: [¶] . . . (B) . . . *within three years after the date of the purchase or transfer of real property for which the claim is filed*, or prior to transfer of the real property to a third party, whichever is earlier. [¶] (C) Notwithstanding subparagraphs (A) and (B), a claim shall be *deemed to be timely filed if it is filed within six months after the date of mailing of a notice of supplemental or escape assessment*, issued as a result of the purchase or transfer of real property for which the claim is filed. [¶] (2) In the case in which the real property subject to purchase or transfer has not been transferred to a third party, a claim for exclusion under this section that is *filed subsequent to the expiration of the filing periods set forth in paragraph (1) shall be considered by the assessor*, subject to all of the following conditions: [¶] (A) *Any exclusion granted pursuant to that claim shall apply*

Article XIIIA also includes several exclusions that make no reference to the concept of change in ownership, but rather state the Legislature "shall" or "may" enact the exclusions; i.e., for replacement of property damaged from a disaster or contamination, and for replacement of property by persons over age 55 or severely disabled. (Art. XIIIA, § 2, subds. (a), (e), (i).) Unlike for the eminent domain and parent child exclusions, Article XIIIA *itself* contains time limits for the enforcement of some of these exclusions, which range from two to five years for the acquisition of replacement property upon the occurrence of the triggering event. (Art. XIIIA, § 2, subd. (i)(1)(A) [five-year deadline for replacement of contaminated property]; subd. (e)(3) [three-year deadline for acquisition of out-of-county replacement of property damaged in disaster]; subd. (a) [two-year deadline for replacement of property by person over age 55 or severely disabled].) The Revenue and Taxation Code mirrors the time limits for acquisition of the replacement property specified in Article XIIIA, and also sets forth additional time limits, including deadlines for filing claims with the county after the acquisition of the replacement property.[8]

---

*commencing with the lien date of the assessment year in which the claim is filed. . . ."* (Italics added.)

[8] These constitutional and statutory provisions include the following. For replacement of contaminated property, the Constitution states (1) the Legislature shall create an exclusion for in-county replacement property; (2) a county may create an exclusion for out-of-county replacement property; and (3) the exclusion applies to replacement property acquired within five years after the sale or transfer of the contaminated property. (Art. XIIIA, § 2, subd. (i)(1)(A).) Additionally, the code states that a claim must be filed within three years of the acquisition of the replacement property. (§ 69.4, subd. (f)(1).)

For replacement of property damaged in a disaster, the Constitution states (1) the Legislature shall create an exclusion for in-county replacement property; (2) the

11

II. *Analysis*

To the extent Olive Lane broadly asserts that the absence of a time limitation in Article XIIIA precludes the Legislature from imposing any time limitations concerning a base year value transfer for eminent domain replacement property, we are not persuaded. It is well established that the Legislature may impose reasonable time restraints on the exercise of constitutional rights (*Rand v. Bossen* (1945) 27 Cal.2d 61, 64-65; *Kuperman v. San Diego County Assessment Appeals Bd. No. 1* (2006) 137 Cal.App.4th 918, 931), including on the rights associated with just compensation for a governmental taking (*Crescent Wharf & Warehouse Co. v. Los Angeles* (1929) 207 Cal. 430, 433-434, overruled on other grounds in *Wilson v. Beville* (1957) 47 Cal.2d 852, 861; *Hair v. United States* (Fed. Cir. 2003) 350 F.3d 1253, 1259-1260).

In the context of eminent domain takings, our high court has observed: "All that the framers of the Constitution meant to do was to protect the citizen in his ownership of property against the state or its agencies appropriating private property to public uses

Legislature may authorize the county to create an exclusion for out-of-county replacement property; and (3) the out-of-county replacement property exclusion applies to property acquired within three years of the damage. (Art. XIIIA, § 2, subd. (e)(1), (3).) Additionally, the code states an in-county replacement property exclusion applies to property acquired within five years after the disaster (§ 69, subd. (a)), and a claim for an out-of-county replacement property must be filed within three years after the acquisition of the replacement property (§ 69.3, subd. (e).)

For replacement property acquired by a person who is over age 55 or severely disabled, the Constitution states (1) the Legislature may create an exclusion for in-county replacement property; (2) the Legislature may authorize the county to create an exclusion for out-of-county replacement property; (3) the exclusion applies to replacement property acquired within two years of the sale of the original property; and (4) the Legislature may extend this exclusion to severely disabled persons. (Art. XIIIA, § 2, subd. (a).) Additionally, the code states the claim shall be filed within three years of the acquisition of the replacement property, but permits prospective relief if the three-year deadline is missed. (§ 69.5, subd. (f)(1)(F), (2)(A).)

12

against the will of the owner without making just compensation for all damages which the owner should sustain by the exercise of governmental power. It was not intended to remove the subject matter beyond the operation of reasonable statutory enactments which affect property rights generally, such as the bar of the statute of limitations." (*Crescent Wharf & Warehouse Co. v. City of Los Angeles, supra*, 207 Cal. at p. 434.) Further, in the context of tax collection, the courts have recognized that time limitations serve the important policy interests of promoting stability and facilitating fiscal planning by governmental agencies. (*Kuperman, supra*, 137 Cal.App.4th at p. 932; *JPMorgan Chase Bank, N.A. v. City and County of San Francisco* (2009) 174 Cal.App.4th 1201, 1213.) Imposition of reasonable time limitations avoids "the absurdity of allowing suits to be filed centuries after the claim on which the suit was based arose." (*Lantz v. Commissioner of Internal Revenue* (7th Cir. 2010) 607 F.3d 479, 482.)

Although the Legislature has the right to impose reasonable time limitations on the exercise of constitutional rights, this does not end our inquiry concerning the meaning of the time limitations set forth in section 68. When interpreting constitutional and legislative enactments, we view the provisions as a whole and seek to determine and effectuate the intent of the enactors. (*Morgan v. Imperial Irrigation Dist*. (2014) 223 Cal.App.4th 892, 905-906.) To interpret section 68, we first look to the voter intent underlying Article XIIIA, and then consider the statutory language and legislative intent in light of the evinced voter intent.

As reflected in our summation above, Article XIIIA creates several categories of exclusions, including a category which has been deemed to be entirely removed from the

13

change-in-ownership characterization and which contains no time limitations (eminent domain and parent-child exclusions), and (2) another category which is tied to a legislative enactment and which contains some time limitations (disaster, contamination, and the over-55 and severely disabled exclusions). The absence of time limits for the eminent domain and parent-child exclusions, and the fact that they are affirmatively removed from the change-in-ownership category, stand in marked contrast to the incorporation of timelines for the other exclusions that are not defined as outside the change-in-ownership category. Article XIIIA's explicit language removing the eminent domain and parent-child transactions from the change-in-ownership characterization reflects that *by definition* they do not constitute a change in ownership permitting reassessment. Also, the fact that Article XIIIA sets forth no time limits for these exclusions—while setting forth time limits for some other exclusions—suggests that the eminent domain and parent-child exclusions were viewed by the voters as creating rights that should be liberally available to the taxpayer notwithstanding the passage of time. Indeed, consistent with Article XIIIA's removal of a transaction from the change-in-ownership category and absence of time limitations, the Revenue and Taxation Code permits the parent-child exclusion to be applied *even if the taxpayer misses the filing deadlines*, albeit in prospective fashion only. (§ 63.1, subd. (e)(2)(A).)

Article XIIIA's clear mandate is to treat eminent domain replacement property as outside the realm of a change in ownership permitting reassessment, and thus to ensure a property owner will maintain the same property tax status for replacement property after his or her property is taken. When interpreting section 68, we are required to assume the

14

Legislature intended that the statute advance the voter intent underlying Article XIIIA. (See *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1102-1103 ["we adopt an interpretation of the relevant statutes that gives full effect to their language and purpose, but also 'eliminates doubts as to the statute's constitutionality' "].) As explained below, section 68's statutory language is reasonably amenable to an interpretation that permits prospective relief for base year value transfer claims filed after the four-year period, and we adopt this interpretation because it advances the voter intent displayed in Article XIIIA.

Section 68 sets forth a four-year timeline for filing an eminent domain replacement property claim and allows for *retroactive* application of the transferred base year value to the month after the replacement property was acquired. However, section 68 contains no provision expressly precluding *prospective* relief in the event a claim is filed after the four-year timeline. The fact that section 68 states the taxpayer "*shall*" request the eminent domain replacement property assessment within four years does not preclude an interpretation allowing consideration of claims filed after the deadline. (§ 68, italics added.) When deciding whether a timeline is mandatory in the sense that it deprives the government of authority to act, "[n]either the word 'may,' nor the word 'shall,' is dispositive." (*People v. Allen* (2007) 42 Cal.4th 91, 101-102.) Rather, "as in any case involving statutory interpretation, we must ascertain the legislative intent to determine what effect to give to a statute's time requirement." (*Id*. at p. 102.) An intent to impose a mandatory time requirement may be evinced by factors such as imposition of a consequence for the failure to comply, or the relation of the time requirement to a

matter of substance rather than convenience. (*Id.* at p. 102 & fn. 6; *Galbiso v. Orosi Public Utility Dist.* (2010) 182 Cal.App.4th 652, 665-667; *Erikson v. Weiner* (1996) 48 Cal.App.4th 1663, 1671-1672.) Also, " 'a court may consider the consequences that would follow from a particular construction and will not readily imply an unreasonable legislative purpose. Therefore a practical construction is preferred.' [Citation.]" (*Board of Education v. Sacramento County Bd. of Education* (2001) 85 Cal.App.4th 1321, 1328.)

The absence of a time requirement in Article XIIIA for the eminent domain exclusion supports that the legislatively-defined time limitation in section 68 is not an essential matter of substance. Also, section 68 imposes no consequence in the event the timeline is missed. By way of comparison, other Revenue and Taxation Code sections expressly indicate that the failure to comply with the filing time requirement deprives the assessor of the authority to consider the claim. For example, section 69.3, which sets forth a three-year filing deadline for an out-of-county replacement of property damaged by a disaster states: "*No relief . . . shall be granted unless the claim is filed . . . within three years* after the replacement property is acquired . . . ." (§ 69.3, subd. (e), italics added].) Similarly, section 69.4, which sets forth a three-year filing deadline for replacement of contaminated property states: "*A claimant is not eligible for the property tax relief provided by this section unless the claim is filed within three years* of the date the replacement property was purchased . . . ." (§ 69.4, subd. (f)(1), italics added.)

Because the language of section 68 contains no suggestion that the assessor loses authority to consider a claim filed after the four-year time period, the time limitation is readily susceptible to a nonmandatory interpretation. For example, in *Galbiso v. Orosi*

16

*Public Utility Dist., supra*, 182 Cal.App.4th 652, the court concluded the taxing agency's failure to meet a statutory deadline did not deprive the agency of authority to act, explaining: "Here, we observe that section 10405 contains no penalty for failure to comply with the time requirements, unlike most statutes of limitations. An apt comparison may be made to section 10400, which *does* set forth a statute of limitations for challenges to the validity of an assessment. That section expressly provides that the validity of an assessment 'shall not be contested in any action or proceeding' unless the time limitation set forth therein is met. Thus, consequences of failure to meet the stated deadline were built into section 10400, a statute of limitations, but that is not the case in section 10405." (*Id.* at pp. 665-667; see *Avila-Santoyo v. U.S. Attorney General* (11th Cir. 2013) 713 F.3d 1357, 1361.)

A nonmandatory interpretation of the time limitation also promotes the constitutionally-mandated just compensation principles governing eminent domain proceedings, which—by virtue of governmental action and through no choice of the property owner—create the need for the property owner to purchase replacement property. Absent application of Article XIIIA, the property owner remains uncompensated in the event the property taxes on the replacement property are higher than on the property taken by the government. Construing the time limitation in section 68 as nonmandatory advances the intent of the voters to incorporate increased property taxes within the just compensation formula in eminent domain transactions.

Accordingly, we interpret section 68 to implicitly allow application of the eminent domain replacement property exclusion in a prospective manner when a taxpayer

17

acquires the property within the four-year period but misses the four-year filing deadline. (See *McLaughlin v. State Bd. of Education* (1999) 75 Cal.App.4th 196, 219-221 [in limited circumstances, statutory terms may be added by implication if necessary to carry out legislative intent]; see, e.g., *San Marcos Water Dist. v. San Marcos Unified School Dist.* (1986) 42 Cal.3d 154, 160-161; *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 194; *In re J.W.* (2002) 29 Cal.4th 200, 202-203.) This interpretation, which maintains the four-year deadline with respect to *acquisition* of the property but provides prospective relief for claims *filed* after the four-year period, accommodates the public policy interest in placing reasonable time limits on the exercise of constitutional rights, while also effectuating the plain language of Article XIIIA that a change in ownership does not occur when property is acquired to replace condemned property. In contrast, a contrary interpretation would allow property that has been constitutionally defined as outside the realm of the change-in-ownership category to be, in effect, permanently placed back into this category.

We note this case does not involve circumstances that call for a heightened level of judicial restraint; for example, when a tax exemption is being created or enlarged by implication, or when the relevant tax provisions clearly preclude relief for untimely claims. (See *Associated Beverage Co. v. Board of Equalization* (1990) 224 Cal.App.3d 192, 211; *JPMorgan Chase Bank, N.A. v. City and County of San Francisco, supra*, 174 Cal.App.4th at pp. 1213-1214; *U.S. v. Brockamp* (1997) 519 U.S. 347, 350-353.) Rather, this case involves the interpretation of the effect of a *generally-worded* statutory time

18

limitation on an *explicit constitutionally-established exclusion* that contains *no time limitation* in the constitutional provision.[9]

We conclude a taxpayer who acquires an eminent domain replacement property within the four-year timeline set forth in section 68 but fails to file the claim with the County within the four-year period is nevertheless entitled to have a request for prospective relief considered by the assessor. Our holding is a narrow one, premised on the just compensation eminent domain principles underlying Article XIIIA, section 2, subdivision (d); the conspicuous absence of a time requirement in Article XIIIA, section 2, subdivision (d) for the eminent domain replacement property exclusion as compared to other exclusionary provisions in Article XIIIA; and the absence of language in section 68 limiting the assessor's authority to consider claims filed after the prescribed deadline.

The County requests that we also decide this appeal based on its assertion that the claimed replacement property does not factually qualify for the eminent domain exclusion because the owner of the replacement property is not the same as the owner of the condemned property. In the proceedings before the trial court, Olive Lane contended the County should be estopped from raising this issue because it had not cited different ownership as a basis for denying the claim nor raised the issue during the administrative proceedings. The trial court did not rule on this matter, and because it includes factual issues we decline to resolve it in the first instance on appeal.

---

[9]     The State Board of Equalization has issued an annotation interpreting section 68's timeline as mandatory (State Bd. of Equalization, Annotation No. 200.0316 (Dec. 22, 1988)); however, we are not bound by this interpretation and for the reasons set forth above we decline to adopt it. (See *Alpha Therapeutic Corp. v. Franchise Tax Bd.* (2000) 84 Cal.App.4th 1, 10-11.)

DISPOSITION

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.  Respondent to pay appellants' costs on appeal.


HALLER, J.

WE CONCUR:


McCONNELL, P. J.


NARES, J.